## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Colleen Burton, Special Agent with the Federal Bureau of Investigation, currently assigned to the Northern Ohio Law Enforcement Task Force (hereinafter referred to as NOLETF) hereinafter referred to as Affiant, being duly sworn, do depose and state that:

## INTRODUCTION

1. Your Affiant is an investigative or law enforcement officer of the United States within the meaning of Section 2510 (7), of Title 18, United States Code, as a Special Agent of the FBI. As such, your Affiant is empowered to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516.

2. Your Affiant has been employed by the FBI for approximately two years. Your Affiant is currently assigned to the Northern Ohio Law Enforcement Task Force (NOLETF), a Cleveland, Ohio, multi-agency Federal, State and local law enforcement drug task force. During your Affiant's assignment with the NOLETF, your Affiant has been assigned to investigations targeting organizations involved in drug trafficking offenses in the Northern District of Ohio. While being trained as a Special Agent of the FBI, your Affiant has received basic drug training at the FBI Academy located in Quantico, Virginia. Your Affiant has executed search warrants which have resulted in the seizure of illegal drugs and evidence of drug violations. Your Affiant has previously been the Affiant on five (5) Title III wiretap applications. These wiretap applications led to the federal arrests and convictions of individuals. Your Affiant has supervised the activities of informants who have provided information and assistance in the federal prosecution of drug offenders. Based upon the above experience, your Affiant is familiar with the modus operandi of persons involved in illicit distribution of controlled substances as well as the terminology used by persons involved in the illicit distribution of controlled substances. Your Affiant is aware that persons involved in the illicit distribution of controlled substances routinely attempt to conceal their identities as well as the locations at which drug

transactions occur. These people are also known to have vehicles, properties, utilities and other items purchased in the names of others in order to conceal the association of drug activities with financial transactions. Your Affiant knows that individuals engaged in organized drug distribution and sales maintain extensive contact with persons from whom they receive drugs and with whom they distribute these drugs.

3. Your Affiant is aware that it is common for drug traffickers to secret drugs, contraband, proceeds of drug sales, and records of drug transactions in secure locations within their residences and vehicles, the residences and vehicles of their associates, and of family members for ready access and to conceal them from law enforcement authorities.

4. As a result of your Affiant's personal participation in this investigation and reports made to your Affiant by other Special Agents of the FBI and other state and local law enforcement officers, witnesses and reliable confidential sources, your Affiant is familiar with the circumstances and offenses described in this Affidavit.

## **BASIS OF INFORMATION**

5. Your Affiant is familiar with the facts and circumstances of the offenses described in this Affidavit based upon your Affiant's personal participation in the investigation of WILLIAM SIZEMORE, MALIK ROSS, and DANTE PERKINS, as well as through information obtained from other law enforcement agencies, witnesses, and reliable sources.

6. Except as otherwise noted, the information set forth in this Affidavit has been provided to your Affiant by FBI Agents or other law enforcement officers. Unless otherwise noted, whenever in this Affidavit your Affiant asserts that a statement was made, the information was provided by another law enforcement officer (who may have had either direct or hearsay knowledge of the statement) to whom your Affiant has spoken or whose report your Affiant has read and reviewed. Likewise, information resulting from surveillance, except where otherwise

2

indicated, does not necessarily set forth your Affiant's observations but rather has been provided directly or indirectly by FBI Agents or other law enforcement officers who conducted such surveillance. Likewise, any information pertaining to vehicles and/or registrations, personal data on subjects and record checks has been obtained through the Law Enforcement Automated Data System (LEADS); from Thompson Reuters, a law enforcement credit header database (CLEAR); from the State of Ohio or the National Crime Information Center (NCIC) computers; or by the Ohio Law Enforcement Gateway database (OHLEG) by members herein described.

7. Since the Affidavit is being submitted for the limited purpose of supporting a criminal complaint and arrest warrant for WILLIAM SIZEMORE, MALIK ROSS, and DANTE PERKINS, your Affiant has not included each and every fact known concerning this investigation. Your Affiant has set forth only the facts that are believed to be necessary to establish the foundation for a criminal complaint.

8. Based upon the information contained in this Affidavit, I submit there is probable cause to believe that on or about October 31, 2018, in the Northern District of Ohio, WILLIAM SIZEMORE, MALIK ROSS, and DANTE PERKINS committed violations of Title 21, United States Code, Sections 846, 841(a)(1), (b)(1)(A), Attempted Possession with Intent to Distribute Cocaine, a Schedule II controlled substance, and Conspiracy to Possess with Intent to Distribute Cocaine, a Schedule II controlled substance.

## CONFIDENTIAL SOURCES

9. Your Affiant has received information obtained from one confidential source (Source 1) during the course of this investigation.

10. Source 1 has no criminal history but does have a pending criminal case. Source 1's cooperation is for consideration in a pending criminal case. Information that Source 1 has provided has been corroborated through physical surveillance, a review of various records (such

3

as BMV records, Lexis/Nexis, Choicepoint, OHLEG, and NCIC), consensually monitored conversations, controlled drug purchases, records searches and telephone records analysis conducted by your Affiant and other NOLETF officers. Source 1's information has never been found to be false or misleading. For these reasons, your Affiant considers Source 1's information reliable.

## FACTS AND CIRCUMSTANCES REGARDING PROBABLE CAUSE

11. On October 22, 2018, Source 1 met with MALIK ROSS and WILLIAM SIZEMORE in Cleveland, Ohio, to discuss the purchase of kilogram quantities of cocaine from Source 1. In a previous conversation with Source 1, ROSS explained that SIZEMORE was his uncle, and ROSS told Source 1 that he would introduce Source 1 to SIZEMORE for the purpose of selling SIZEMORE cocaine. During the October 22, 2018, meeting, law enforcement visually identified ROSS and SIZEMORE during physical surveillance of this meeting. During the meeting, ROSS and SIZEMORE negotiated the price, and SIZEMORE agreed to pay $32,000 per kilogram of cocaine. Law enforcement reviewed a recording of this meeting, and verified the content of the conversation.

12. On October 25, 2018, NOLETF investigators learned from Source 1 that ROSS reached out to confirm the cocaine delivery for that following Monday.

13. On Monday, October 29, 2018, there were multiple recorded telephonic communications between Source 1, SIZEMORE, and ROSS. Investigators learned that SIZEMORE wanted to meet Source 1 on October 30, 2018, to further discuss how the kilogram quantity cocaine deal would happen.

14. On October 30, 2018, SIZEMORE and ROSS met Source 1 to discuss the specifics of the drug transaction to take place later that same day. Law enforcement listened to the conversation, which was transmitted in real-time. During the conversation, SIZEMORE and

4

ROSS stated that they wanted to test the cocaine product for quality before purchasing. Later that same day, after multiple recorded conversations, it was agreed upon that the narcotic purchase would take place the next day, October 31, 2018.

15. On October 31, 2018, Source 1 had several recorded conversations with SIZEMORE and ROSS, which law enforcement has reviewed, where they agreed to purchase two kilograms of cocaine later that day for $32,000 per kilogram. SIZEMORE explained that his cousin was getting the money to pay for the cocaine. The agreement was that they would pay for one kilogram and be fronted the second kilogram. Investigators observed SIZEMORE and ROSS exit Bakersfield Restaurant in Cleveland, Ohio, with other yet unknown persons, later identified as DANTE PERKINS, and his girlfriend and son. Surveillance observed SIZEMORE and ROSS enter SIZEMORE's vehicle, a black 2011 Infiniti SUV, bearing the license plate HMV7378, leave the area, and arrive at the Four Points Sheridan Hotel, West 150th Street, Cleveland, Ohio. (During previous recorded conversations with Source 1 and SIZEMORE, Source 1 instructed that the meeting place for the drug transaction would take place at the above mentioned location).

16. Law enforcement conducting physical surveillance at the Four Points Sheridan saw SIZEMORE's vehicle park close to Source 1's vehicle. Subsequently, a blue Chevy license plate number HON9999, registered to DANTE PERKINS, parked close to Source 1's vehicle. Law enforcement observed SIZEMORE got out of his Infinity and get into Source 1's vehicle in the front passenger seat. Law enforcement saw ROSS remain in the Infinity. While in Source 1's vehicle, SIZEMORE motioned to DANTE PERKINS to come to Source 1's vehicle. PERKINS then got out of the Chevy, and PERKINS entered the rear passenger side of Source 1's vehicle. Following the meeting, law enforcement debriefed Source 1, who stated that when PERKINS entered Source 1's vehicle, PERKINS handed Source 1 a black bag containing $32,000, as previously discussed for the purchase of 2 kilogram of cocaine. Source 1 verified that the money

5

was in the bag, and Source 1 called his purported drug associate (an undercover Task Force Officer (TFO)) to bring the purported kilograms of cocaine to Source 1. The undercover cover TFO walked to Source 1's vehicle and handed Source 1 a bag containing the purported two kilograms of cocaine. Source 1 then gave the bag of purported cocaine to PERKINS. Once the drug transaction was completed, law enforcement arrested ROSS, SIZEMORE, and PERKINS and positively identified them. This meeting was recorded, and surveillance officers listened to the conversation in the vehicle between Source 1, SIZEMORE, PERKINS, and ROSS, as it was being transmitted in real time.

16. Based upon the information contained in this Affidavit, I submit there is probable cause to believe that on or about October 31, 2018, in the Northern District of Ohio, WILLIAM SIZEMORE, MALIK ROSS, and DANTE PERKINS conspired to possess with intent to distribute cocaine and attempted to possess with the intent to distribute cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 846, 841(a)(1), (b)(1)(B).

_____
Special Agent Colleen Burton
FBI, NOLETF

Sworn to via telephone after submission
by reliable electronic means,
Fed. Crim. Rules 4.1; 41(d)(3),
this  1st  day of November, 2018.

_____
DAVID A. RUIZ
U.S. MAGISTRATE JUDGE

6